862 F.2d 316
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
LABORERS' PENSION TRUST FUND--"DETROIT & VICINITY;"
Laborers' Vacation & Holiday Trust Fund--"Detroit
& Vicinity"; Laborers' Metropolitan
Detroit Health & Welfare Fund,
Plaintiffs-Appellants,
v.
STANDARD MACHINE & EQUIPMENT COMPANY; Continental Rigging &
Hauling, Inc.; Frank Carlow; and Sam Carlow,
Defendants-Appellees.
 No. 86-1552.
 United States Court of Appeals, Sixth Circuit.
 Nov. 14, 1988.
 
 Before ENGEL, KRUPANSKY and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 The appellants in this case, who were plaintiffs in the district court, are trustees of certain collectively bargained employee benefit plans. After filing suit against defendant Continental Rigging & Hauling and others for unpaid employer contributions, the plaintiff trustees obtained a judgment against Continental. Summary judgment was entered in favor of the remaining defendants, Standard Machine & Equipment Company (a corporation related to Continental) and the brothers Carlow, who allegedly had direct or indirect ownership interests in one or both corporations.
 
 
 2
 It was the theory of the plaintiffs that Standard Machine and the Carlows were alter egos of Continental, but the district court understood that it was being asked to determine that the employees of both corporations constituted a single bargaining unit. Summary judgment was granted to the defendants other than Continental because the court thought it was obliged to defer, on that issue, to the primary jurisdiction of the National Labor Relations Board.
 
 
 3
 We conclude that the district court had jurisdiction to consider the plaintiffs' alter-ego claims, and we shall reverse the summary judgment granted to Standard Machine. Although the claim against that company may ultimately prove to be amenable to resolution in summary judgment proceedings, the matter does not appear to have been ripe for summary disposition at the time the district court acted. We shall affirm the judgments in favor of the Carlows, however, because no showing was made that either of them had perpetrated any fraud or otherwise conducted himself in a way that would justify piercing the corporate veil and treating him as the corporate employer.
 
 
 4
 * It is undisputed here that Continental, a company engaged in demolition work at Wyandotte, Michigan, failed to make required payments into certain pension funds established pursuant to a collective-bargaining agreement. Following a bench trial, judgment was entered against Continental for $36,453.36 plus attorney's fees, costs, and interest. The plaintiffs represent that Continental is uncollectible.
 
 
 5
 The plaintiff pension funds claimed that Standard Machine & Equipment Company, Frank Carlow, and Sam Carlow were also liable for the pension fund contributions. These defendants moved for summary judgment on the ground that they had "no contractual relationship, duty or obligation to the Plaintiffs and therefore have no liability directly or indirectly for fringe benefits or other costs or payments allegedly due under the Collective Bargaining Agreement...." The defendants argued that "[t]he basic operations of the two companies are separate, distinct, and different. There is no common management, common ownership, or centrally controlled labor relations," and there was no basis for treating Continental and Standard Machine as "a single employer under National Labor Relations Board standards...." The defendants also asserted that in the collective-bargaining agreement the union recognized that Continental and Standard Machine "are separate and distinct entities, are not the alter-ego of each other, are not double breasted operations and are separate bargaining units for all purposes whatsoever."
 
 
 6
 The motion was supported by an affidavit from Frank Carlow stating that Standard Machine and Continental are structurally and managerially separate and distinct corporations because they are incorporated in different states and have only one common officer and director, separate jobsite management, separate bank accounts, and separate employer numbers. Mr. Carlow declared that he is an officer of both Standard Machine and Continental and owns 30 percent of the latter's outstanding stock. All of Standard Machine's stock, he said, belongs to a corporation called SME Industrial, Inc. The affidavit did not say who owns the stock of SME, nor did it say whether Frank Carlow has any indirect ownership interest in the remaining 70 percent of Continental's stock. Sam Carlow, the brother of Frank Carlow, filed an affidavit stating that he has "no ownership interest" in either Continental or Standard Machine.
 
 
 7
 In response to the summary judgment motion the plaintiffs argued that the fact "that none of these defendants had a collective bargaining agreement with the Laborers' Union" was irrelevant to an alter-ego determination, which determination would depend on a number of factors that "could be illuminated by an analysis of the books and records of the corporate defendants." Discovery requests for such documents were still outstanding when the summary judgment motion was filed, and the plaintiffs asked the court to "first determine that plaintiffs are entitled to the documents which they requested and to delay [any] hearing on the defendants' motion until plaintiffs have had an opportunity to examine these documents and pursue any further discovery on these matters."
 
 
 8
 In support of their alter-ego claims, plaintiffs submitted the affidavit of Willie Jones, a laborer at the Wyandotte project site. He stated that the project was divided into two parts and that Continental employees, who worked on the "South Plant" side, were at times ordered to perform work on Standard Machine's "North Plant" side. He added that in its work on the "South Plant" side, Continental used trucks, cranes, and other heavy equipment bearing the initials of Standard Machine.
 
 
 9
 The district court, in ruling from the bench, did not reach the alter-ego question:
 
 
 10
 "The Court is going to decline to make the factual evaluations necessary to determine alter ego status in this lawsuit. The Court will dismiss the lawsuit, however, for lack of jurisdiction in deference to the primary jurisdiction of the NLRB. The law is well settled that the NLRB has the exclusive jurisdiction under 29 USC 159 B to determine appropriate bargaining units. In this instance--this case could not exist if the NLRB had not already determined ... that the appropriate bargaining [unit] in question is the Laborers who are employees of Defendant Continental.
 
 
 11
 The Plaintiff is now asking the Court to determine that that bargaining unit includes not only the employees named of Continental, but to determine that Defendants Standard Machine, and Frank Carlow, and Sam Carlow are employers of the bargaining unit which would bring in the laborers of Standard Machine into the bargaining unit with those of Continental. The court has no idea whatsoever that that would be an appropriate bargaining unit. And this District Court is not statutory authority to make the determination as to the propriety of any bargaining [unit]. So it must dismiss the case insofar as these three Defendants are concerned."
 
 II
 
 12
 Nothing in the National Labor Relations Act deprives the federal courts of jurisdiction to determine whether shareholders or officers are alter egos of an employer, and such determinations are commonplace. Alman v. Danin, 801 F.2d 1 (1st Cir.1986) (ERISA delinquent contribution liability); DeBrecini v. Graf Brothers Leasing, Inc., 828 F.2d 877, 879 (1st Cir.1987), cert. denied, --- U.S. ---, 108 S.Ct. 1024 (1988) (ERISA withdrawal liability); Lowen v. Tower Asset Management, Inc., 829 F.2d 1209, 1220-1 (2d Cir.1987) (ERISA prohibited transaction liability); United States v. Pisani, 646 F.2d 83, 88 (3d Cir.1981) (Medicare overpayment liability); Carpenters Health and Welfare Fund of Philadelphia and Vicinity v. Kenneth R. Ambrose, Inc., 727 F.2d 279, 283-4 (3d Cir.1983) (Sec. 301 LMRA liability); Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan v. Hroch, 757 F.2d 184, 190 (8th Cir.1985) (Sec. 301 LMRA liability); Operating Engineers Pension Trust v. Reed, 726 F.2d 513, 515 (9th Cir.1984) (Sec. 301 LMRA liability); Combs v. Ryan Coal Co., Inc., 785 F.2d 970, 982-3 (11th Cir.1986), cert. denied, 479 U.S. 853 (1986) (ERISA delinquent contribution liability); Connors v. P & M Coal Company, 801 F.2d 1373, 1378 (D.C.Cir.1986) (ERISA withdrawal liability).
 
 
 13
 It is equally clear that a district court has jurisdiction to consider whether a non-signatory business may be bound by a collective-bargaining agreement as the alter ego of a signatory. Service, Hospital, Nursing Home and Public Employees Union, Local No. 47 v. Commercial Property Services, Inc., 755 F.2d 499 (6th Cir.), cert. denied, 474 U.S. 850 (1985); Metropolitan Detroit Bricklayers District Council v. J.E. Hoetger & Company, 672 F.2d 580, 583 (6th Cir.1982); Greater Kansas City Laborers Pension Fund v. Thummel, 738 F.2d 926 (8th Cir.1984). "[W]here a question of unit determination is not presented, a court may properly ascertain who is bound by a particular collective bargaining agreement." Board of Trustees v. Universal Enterprises, 751 F.2d 1177, 1184 (11th Cir.1985).[1]
 
 
 14
 The alter-ego issue "is primarily contractual, not representational." Roberts v. Ayala, 709 F.2d 520, 521 (9th Cir.1983). The case at bar is not one in which there appears to be a need for the Labor Board to exercise its expertise in evaluating who should represent the community of workers' interests, and we do not believe that there was any reason to defer to its jurisdiction here. See Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc., 690 F.2d 489, 508-9 (5th Cir.1982), cert. denied, 464 U.S. 932 (1983).
 
 
 15
 The Labor Board has developed a "single employer" theory for its own purposes, and the district court seems to have supposed that the "single employer" and "alter-ego" theories are identical. They are not.
 
 
 16
 The "single employer" theory was formulated by the Board to permit a self-imposed jurisdictional minimum to be satisfied, under certain circumstances, by combining the volume of business of two or more employers, and to permit the Board to treat the employees and management of two entities as members of one entity for purposes of shaping appropriate unfair labor practice remedies. Pratt-Farnsworth, supra, 690 F.2d at 504. In order to enforce a "single employer" remedy, it must be shown that: 1) the two entities should be treated as one because of the interrelation of operations, common management, centralized control of labor relations and common ownership; and 2) the employees of the two entities should be treated as one bargaining unit. Although it is generally agreed that the primary employer-focused determination (which is similar to that which must be made under the alter-ego theory) may be made by a district court, appellate courts are divided as to whether a district court has jurisdiction to conduct the secondary employee-focused examination--i.e., to make an "appropriate bargaining unit" determination. See Brotherhood of Teamsters Local No. 70 v. California Consolidators, Inc., 469 U.S. 887 (1984) (White, J., dissenting from denial of certiorari); see also Trustees of Colorado State Wide Iron Workers Fund v. A & P Steel, Inc., 812 F.2d 1518, 1524-27 (10th Cir.1987), rehearing granted and modified on other grounds, 824 F.2d 817 (10th Cir.1987).
 
 
 17
 In our case, however, there was no need for the district court to make any sort of bargaining unit determination. The plaintiffs expressly declined to rely on the "single employer" theory, and they neither asked that the employees of Continental receive the benefits of Standard Machine's collective-bargaining agreement nor urged that Continental's collective-bargaining agreement should govern the contractual relations between Standard Machine and its employees.
 
 III
 
 18
 Notwithstanding the erroneous basis for the summary judgment order, the defendants urge us to affirm the order on the grounds that the plaintiffs failed to offer the necessary factual support for their allegations and "failed to assert that Continental was created to avoid the collective-bargaining obligations of Standard."
 
 
 19
 As to the latter point, a finding of employer intent to evade collective-bargaining obligations is "not essential or prerequisite to imposition of alter ego status. Instead it is merely one of the relevant factors which the Board can consider, along with the well-established factors of substantial identity of management, business purpose, operation, equipment, customers, supervision and ownership, in determining alter ego status." NLRB v. Allcoast Transfer, Inc., 780 F.2d 576, 581 (6th Cir.1986).
 
 
 20
 As to the argument that plaintiffs failed to show the existence of disputed issues of fact, it seems to us that as far as Standard Machine is concerned, the plaintiffs did not have an adequate opportunity to pursue appropriate discovery. See Celotex Corp. v. Catrett, 477 U.S. 317, 326, 91 L.Ed.2d 265, 276 (1986); Commercial Property Services, supra, 755 F.2d at 507. It is true that the plaintiffs did not submit affidavits of the sort contemplated by Rule 56(f), Fed.R.Civ.P., to explain why further discovery was necessary, but a litigant is not completely foreclosed from relying--at "his peril"--upon the record of the case. Paterson-Leitch Company, Inc. v. Massachusetts Municipal Wholesale Electric Company, 840 F.2d 985, 988-90 (1st Cir.1988); First Chicago International v. United Exchange Co., Ltd., 836 F.2d 1375, 1380 (D.C.Cir.1988); Cowan v. J.C. Penney Co., 790 F.2d 1529, 1532 (11th Cir.1986); Sames v. Gable, 732 F.2d 49, 51-52 n. 3 (3d Cir.1984); Littlejohn v. Shell Oil Co., 483 F.2d 1140, 1146 (5th Cir.) (en banc), cert. denied, 414 U.S. 1116 (1973).
 
 
 21
 The docket of the district court indicates that the plaintiffs had sought production of the payroll records of Continental and Standard Machine. Continental refused to comply with the request in part, and Standard Machine refused to comply altogether. The plaintiffs filed a timely motion to compel, but the district court did not rule on it because of its conclusion that it lacked jurisdiction. Given the state of the record as a whole, it seems to us appropriate that the district court be permitted to rule in the first instance on the discovery motions and on any summary judgment motion based on theories of the sort advanced in this court.
 
 
 22
 As far as the Carlow brothers are concerned, we have no hesitancy in affirming the judgment in their favor. Federal alter-ego claims against officers or shareholders can only succeed if there has been some allegation of misuse of the corporate form. Reed, supra, 726 F.2d at 515; Connors, supra, 801 F.2d at 1378; Pisani, supra, 646 F.2d at 88; Hroch, supra, 757 F.2d at 190; Combs, supra, 785 F.2d at 983. No evidence of abuse of the corporate form by the Carlow brothers was ever presented to the district court, and that issue was not a subject of the plaintiffs' discovery efforts.
 
 
 23
 The judgment in favor of Sam and Frank Carlow is AFFIRMED, the judgment in favor of Standard Machine is REVERSED, and the case is REMANDED for further proceedings.
 
 
 
 [1]
 Cf. H.Cong.Rep. No. 510, 80th Cong., 1st Sess. 42, U.S.Code Cong.Serv. 1947, 1135, reprinted in 1 NLRB, Legislative History of the Labor Management Relations Act, 1947, at 421 (1948) ("Once parties have made a collective-bargaining agreement contract, the enforcement of that contract should be left to the usual processes of the law and not to the National Labor Relations Board.")