EMPLOYER–TEAMSTERS JOINT COUNCIL NO. 84, HEALTH AND WELFARE FUND, Plaintiff,

v.

WEATHERALL CONCRETE, INC., Defendant.

EMPLOYER–TEAMSTERS JOINT COUNCIL NO. 84, PENSION FUND, Plaintiff,

v.

WEATHERALL CONCRETE, INC., Defendant.

Civ. A. Nos. 77–3184, 77–3185.

United States District Court, S. D. West Virginia, Huntington Division.

April 10, 1979.

Lafe C. Chafin, Ray L. Hampton, II, Huntington, W. Va., for plaintiff.

John L. Hash, Menis E. Ketchum, Huntington, W. Va., for defendant.

## MEMORANDUM ORDER

HADEN, District Judge.

The above styled civil actions have been submitted to the Court for decision upon facts stipulated and agreed to by the parties. Jurisdiction is conferred upon the Court by 29 U.S.C. § 185, and more specifically by 29 U.S.C. § 1132. Plaintiffs have alleged that payments made to the trust funds under the collective bargaining agreement between Defendant and Teamsters, Chauffeurs, Warehousemen and Helpers Local Union No. 505, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Union) were not in the amounts agreed to and seek judgment in the amount of the deficiencies. The actions arise out of the same set of facts and will be considered together for decision.

In 1958 Defendant executed a trust agreement whereby Defendant and the Union created a trust fund to be known as the Employer-Teamsters Joint Council No. 84 Pension Fund to administer employer contributions to the pension fund established by collective bargaining agreements between Defendant and the Union. In 1960 Defendant executed a similar trust agreement creating a trust fund to be known as the Employer-Teamsters Joint Council No. 84, Health and Welfare Fund to administer employer contributions to the health and welfare fund. Each trust agreement provided that contributions to the trust fund shall be made in the amounts required by the collective bargaining agreements between the Union and the Employer.

Defendant and the Union entered into a new three year collective bargaining agreement in 1972. The agreement provided, inter alia, that the employer agrees to contribute $28.50 per month to the Teamsters Joint Council No. 84, Health and Welfare Fund and $34.67 per month to the Teamsters Joint Council No. 84 Pension Fund for each regular employee covered by the agreement.

The contributions were made to the trust funds through a practice whereby the trustees regularly billed Defendant for the amounts due for each eligible employee. During the period of the collective bargaining agreement beginning March, 1972, Plaintiffs erred in billing Defendant by failing to take into account the higher rates provided for in that agreement and continued to bill Defendant at the rate provided for in the previous collective bargaining agreement. The error was not discovered until Defendant and the Union entered into collective bargaining negotiations for a new three-year agreement in 1975. This resulted in employer contribution deficiencies under the 1972 agreement of $3,757.50 to the health and welfare fund, and $3,892.83 to the pension fund. Plaintiffs notified Defendant of the error and requested that it pay to the trust funds the deficiencies that had accrued. Defendant refused and this action followed.

In submitting this case to the Court for decision the parties have agreed that the amounts required to be paid under the collective bargaining agreement entered into in 1972 were $34.67 per month into the pension fund and $28.50 per month into the health and welfare fund for each regular employee covered by the agreement; that a true and correct copy of the agreement was received by each party; and that the trustees improperly billed Defendant at the rate of $26.00 and $20.15 per employee. In support of its claim that Plaintiffs may not now collect the deficiencies that accrued as a result of the underpayments, Defendant contends that since the error was the result of Plaintiffs' failure to adjust their billings to comply with the new rates, and since Defendant promptly and consistently paid all amounts billed, Plaintiffs are now estopped to assert that additional amounts

are owed under the collective bargaining agreement.

■ In order that Defendant might avail itself of the doctrine of estoppel, there must have been present in the transactions between Plaintiffs and Defendant a false representation of facts by Plaintiffs relied and acted upon by Defendant to its prejudice or detriment without knowledge or the means of knowledge of the real facts. *United States v. Fidelity and Casualty Co. of New York,* 402 F.2d 893 (4th Cir. 1968); *Stuart v. Lake Washington Realty Corporation,* 141 W.Va. 627, 92 S.E.2d 891 (1956).

■ In the present case it cannot be said that Defendant was without knowledge of the true facts. Defendant has stipulated that it received a copy of the collective bargaining agreement setting forth the rates at which employer contributions to the two trust funds were to be made and that the rates stated in the collective bargaining agreement were those agreed upon by the parties. This agreement, signed personally by the president of Defendant corporation, must be said to have given Defendant constructive, if not actual, knowledge that the contributions were not being made at the rates previously agreed upon. The Oregon Supreme Court reached the same conclusion in an action very similar to the present case. *Shaw v. Northwest Truck Repair,* 273 Or. 452, 541 P.2d 1277, 91 LRRM 2051 (1975). There the Court held that where the defendant had in its possession a copy of the collective bargaining agreement signed by the president of the corporation, the defendant was precluded by its knowledge of the terms of the agreement from asserting estoppel as a defense to an action by trustees of the pension trust fund to collect employer contribution deficiencies. As in this case, the deficiencies had accrued as a result of the trustees' failure to adjust their billings to reflect the higher rate agreed to by the Union and the employer under a new collective bargaining agreement.

■ A number of other affirmative defenses have also been raised by Defendant, but all of these require as an essential element that there be a new agreement, either written or implied; or a meeting of the minds as to the sum now due; or an open account or unliquidated amount in dispute; or a mistake that goes to the formation of the agreement. Defendant has not shown to the Court's satisfaction that any of the required circumstances for the application of these affirmative defenses exist, and the Court, after a careful review of the record, can find none.

■ Defendant had a pre-existing duty to pay a liquidated sum of money. When Defendant signed the collective bargaining agreement it agreed that it would pay each month for thirty-six months a specified sum of money for each employee covered by the agreement. The amount due each month could be easily calculated by multiplying the number of eligible employees for that month by the specified monthly sum of money due for each employee. Defendant contends that Plaintiff's acceptance, without protest, of a lesser amount constitutes an agreement to accept that lesser amount as a complete discharge of the duty owing. While Defendant's argument may have merit under a different set of facts, it must fail in this case for if one has a pre-existing duty and that pre-existing duty is to pay a liquidated sum of money, any subsequent agreement to pay a lesser sum must fail for lack of consideration. If the sum promised is less than the original debt, the debtor's promise is only to perform part of a duty already owing and, therefore, does not constitute sufficient consideration for a new agreement. *Restatement of Contracts,* § 417, comment c at 786 (1932).

■ Plaintiffs, in submitting this case to the Court for decision upon the stipulated facts, have moved the Court for attorney fees and interest from the date any and all delinquent contributions occurred. Authority for the granting of attorney fees in actions of this nature is to be found in 29 U.S.C. § 1132(g) which provides that the Court in its discretion may allow reasonable attorney fees and costs to either party. Considering, however, the circumstances of

this case and the fact that Plaintiffs, in part, precipitated this action by their failure to properly bill Defendant for the amounts due, the Court finds that the granting of attorney fees is not warranted in this case, and accordingly, the motion is DENIED. Plaintiffs' motion for interest from the date any and all delinquent contributions occurred must be viewed in a different light, however.

■ The general rule in breach of contract actions is that when damages are ascertainable with mathematical precision prejudgment interest is awardable as a matter of right. *Eazor Exp., Inc. v. International Bro. of Team., Etc.,* 520 F.2d 951 (3rd Cir. 1975), *cert. denied* 424 U.S. 935, 96 S.Ct. 1149, 47 L.Ed.2d 342, rehearing denied 425 U.S. 908, 96 S.Ct. 1502, 47 L.Ed.2d 758.

"A suit upon a contractual obligation to pay money at a fixed or ascertainable time is a suit to recover damage for its breach, including both the principal amount and interest by way of damage for delay in payment of principal after the due date." *Royal Indemnity Co. v. U. S.,* 313 U.S. 289, 295–296, 61 S.Ct. 995, 997, 85 L.Ed. 1361.

The award of prejudgment interest is to compensate Plaintiff for the loss sustained by not receiving the amount to which he was entitled at the time he was entitled to receive it, and such award is considered necessary to place the insured party in the position he would have occupied if the party in default had fulfilled his obligated duty. *E. I. duPont DeNemours and Co. v. Lyles and Lang Const.,* 219 F.2d 328 (4th Cir. 1955); *Railroad Credit Corporation v. Hawkins,* 80 F.2d 818 (4th Cir. 1936); see also *Montgomery Ward and Co. v. Collins Estate, Inc.,* 268 F.2d 830 (4th Cir. 1959); *Fawley Motor Lines, Inc. v. Cavalier Poultry Corp.,* 235 F.2d 416 (4th Cir. 1956).

■ Although Plaintiffs are not entirely free of fault in this matter, that fact alone is not enough to preclude the application of the general rule in this case. Defendant had a contractual duty to pay the required amounts due and possessed the knowledge or means of knowledge to know that pay-

ments were not being made as required by the collective bargaining agreement. Defendant's complete reliance on Plaintiffs' invoices was not justified, and, therefore, does not excuse it from paying prejudgment interest.

■ In awarding prejudgment interest it is appropriate for the Court to allow prejudgment interest at such a rate as will compensate Plaintiffs for the delay in the receipt of their money. *Clarke Baridon, Inc. v. Meritt-Chapman and Scott Corp.,* 311 F.2d 389 (4th Cir. 1962). For interest is to be computed not at the legal rate fixed by statute, but at the rate Plaintiffs would have to pay upon a loan of a similar amount. The Court may take into consideration the state of the money market and the rate charged by banks for the use of money. *E. I. duPont DeNemours and Co. v. Lyles and Lang Const. Co., supra.* In West Virginia interest rates on the types of loan that would be involved here have fluctuated considerably, but never going below eight (8%) per cent in recent years. In this case the Court finds that prejudgment interest computed at a rate of eight (8%) per cent per annum will adequately compensate Plaintiffs for the delay in receipt of their money.

For the foregoing reasons the Court awards judgment to Plaintiff Employer-Teamsters Joint Council No. 84 Health and Welfare Fund in the amount of $3,757.50, together with interest thereon at the rate of eight per cent (8%) per annum to be computed from the respective dates that the delinquent amounts became payable.

The Court further awards judgment to Plaintiff Employer-Teamsters Joint Council No. 84 Pension Fund in the amount of $3,892.83, together with interest thereon at the rate of eight per cent (8%) per annum to be computed from the respective dates that the delinquent amounts became payable.

Counsel are directed to prepare judgment orders in accordance with this memorandum order setting forth the total amount of the award in each action.